IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

MARLUNTAY BROWNLEE *individually, and*                            PLAINTIFFS
*as next friend of* minors L.B., Z.B., and A.C., and
TYDRICUS PRIDE

V.                                            CIVIL ACTION NO. 3:18-CV-272-SA-JMV

THE MISSISSIPPI DEPARTMENT
OF PUBLIC SAFETY, and MILTON WILLIAMS, JR.               DEFENDANTS

ORDER AND MEMORANDUM OPINION

On December 18, 2018, Tydricus Pride and Marluntay Brownlee, in her individual capacity and as next friend of three minors: L.B., Z.B., and A.C., initiated this action by filing their Complaint [1] in this Court against the Mississippi Department of Public Safety ("MDPS") and Trooper Milton Williams, Jr. On August 30, 2019, the Court, on its own motion and pursuant to Rule 12(e) of the Federal Rules of Civil Procedure, ordered the Plaintiffs to file a more definite statement in the form of an amended complaint. The Plaintiffs filed their Amended Complaint [25] on September 13, 2019. MDPS then filed a Motion to Dismiss [28] based on sovereign immunity and Trooper Williams filed a Motion to Dismiss [30] based on qualified immunity. Both Motions [28, 30] are fully briefed and ripe for review.

*Factual and Procedural Background*

At about 12:00 p.m. on September 16, 2017, Brownlee was driving northbound on Highway 49 near Marks, Mississippi. Tydricus Pride, Brownlee's nephew who was eighteen years old at the time, and three minor children: L.B., Z.B., and A.C., were riding in the vehicle with Brownlee. Trooper Williams of the Mississippi Highway Patrol initiated a traffic stop of Brownlee's vehicle. Brownlee admits that she was speeding prior to being pulled over. Trooper

Williams performed breathalyzer and field sobriety tests on Brownlee and ultimately arrested her. Brownlee was charged with speeding, a window tint violation, failure to have insurance, a seatbelt violation, and driving under the influence.

Brownlee contends that, after being advised that she was under arrest, Trooper Williams denied her request to contact someone to pick up the passengers before she was taken into custody. Trooper Williams called a tow truck to transport Brownlee's vehicle from the scene. According to the Plaintiffs, Pride attempted to give Trooper Williams a phone with Pride's grandmother on the line so that she could get directions to their specific location, but Trooper Williams refused to speak with her. Brownlee was taken to jail. A tow truck eventually arrived on the scene, and the driver transported Pride and the minor children to a nearby McDonald's where a relative came to pick them up.

Later, the Quitman County Justice Court dismissed the charge for driving under the influence. Brownlee pled guilty to all other charges.

In the Plaintiffs' Amended Complaint [25], they assert a myriad of claims against MDPS and Trooper Williams, in both his official and individual capacity. First, Brownlee contends that Trooper Williams violated her Fourth and Fourteenth Amendment rights by improperly seizing her without probable cause. The Plaintiffs also contend that Pride and the minor children were "improperly seized . . . by being left on the side of the road after Defendant Williams took Plaintiff Brownlee into custody and drove away in violation of their Fourth Amendment Rights." [25]. Additionally, the Plaintiffs assert state law claims against Trooper Williams for negligent/intentional infliction of emotional distress, reckless disregard, abuse of process, malicious prosecution, and bystander liability. They further contend that MDPS is liable for negligent hiring and failure to properly monitor, train, and supervise its officers.

*Analysis and Discussion*

As noted above, MDPS contends it is entitled to sovereign immunity, and Trooper Williams has claimed qualified immunity as to the claims asserted against him in his individual capacity.[1]

I. *Sovereign Immunity*

MDPS claims that it is an arm of the state entitled to sovereign immunity under the Eleventh Amendment. The Amendment provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. Although the Eleventh Amendment's language does not address suits against a State by its own citizens, the Supreme Court has "consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974).

The Eleventh Amendment acts to bar an individual "from suing a state in federal court unless the state consents to suit or Congress has clearly abrogated the state's sovereign immunity." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). The Eleventh Amendment bars both federal *and* state law claims against a state in federal court. *Yul Chu v. Miss. State Univ.*, 901 F. Supp. 2d 761, 771 (N.D. Miss. 2012) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119-21, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984)) (emphasis added); *Kirk v. Miss. Dep't*

---

[1] The claims against Trooper Williams in his official capacity are essentially claims against MDPS. *See Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991) ("Suits against state officials in their official capacity . . . should be treated as suits against the State."). The Court will therefore analyze the Plaintiffs' official capacity claims against Trooper Williams jointly with the claims against MDPS.

*of Pub. Safety*, 2016 WL 10293382 at *4 (S.D. Miss. May 26, 2016) ("[T]he immunity provided by the Eleventh Amendment applies to both federal and state law claims.").

Importantly, the immunity "protects not only states from suit in federal court, but also 'arms of the state.'" *U.S. Oil Recovery Site Potential Responsible Parties Group v. R.R. Comm'n of Tex.*, 898 F.3d 497, 501 (5th Cir. 2018) (quoting *Richards v. S. Univ.*, 118 F.3d 450, 452-54 (5th Cir. 1997)). Thus, "[t]he state need not be the named party in a federal lawsuit, for a state's Eleventh Amendment immunity extends to any state agency or entity deemed an 'alter ego' or 'arm' of the state." *Perez*, 307 F.3d at 326. It follows that the immunity "extends to state officials who are sued in their official capacities because such a suit is actually one against the state itself." *Yul Chu*, 901. F. Supp. 2d at 771 (quoting *New Orleans Towing Ass'n, Inc. v. Foster*, 248 F.3d 1143 (5th Cir. 2012)) (additional citations omitted). The Fifth Circuit has set forth six factors to consider in analyzing whether an entity is an "arm of the state" entitled to Eleventh Amendment protection:

> (1) whether state statutes and case law view the entity as an arm of the state; (2) the source of the entity's funding; (3) the entity's degree of local autonomy; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has the authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property.

*Perez*, 307 F.3d at 326-27. "No one factor is dispositive, though we have deemed the source of an entity's funding a particularly important factor because a principal goal of the Eleventh Amendment is to protect state treasuries." *Id*. at 327 (citing *Hudson v. City of New Orleans*, 174 F.3d 677, 682 (5th Cir. 1999)). To that end, "[a]n entity need not show that all of the factors are satisfied; the factors simply provide guidelines for courts to balance the equities and determine if the suit is really one against the state itself." *Id*.

This Court and the District Court for the Southern District of Mississippi have consistently held that MDPS is an "arm of the state" for Eleventh Amendment purposes. *See*, *e.g.*, *Johnson v. Miss. Dep't of Pub. Safety*, 2015 WL 5313563 at *2 (N.D. Miss. Sept. 11, 2015) ("The Mississippi Department of Public Safety . . . is an arm of the State of Mississippi for purposes of Eleventh Amendment immunity."); *Hawn v. Hughes*, 2014 WL 4418050 at *1 (N.D. Miss. Sept. 8, 2014) ("The Mississippi Department of Public Safety is an agency and arm of the state of Mississippi."); *Meaux v. Miss.*, 2015 WL 3549579 at *3 (S.D. Miss. June 8, 2015) ("Both the Mississippi Highway Patrol and Mississippi Department of Public Safety are considered to be arms of the State of Mississippi for purposes of Eleventh Amendment immunity.").

In light of this well-settled authority and considering the fact that the Plaintiffs have made no argument to the contrary, the Court finds that MDPS is an "arm of the state" for Eleventh Amendment purposes. Consequently, MDPS is "entitled to Eleventh Amendment immunity unless Congress has validly abrogated the State's sovereign immunity, the State has waived sovereign immunity or consented to suit, or the *Ex parte Young* doctrine renders the State amenable to suit[.]" *Jones v. Tyson Foods, Inc.*, 971 F. Supp. 2d 671, 679 (N.D. Miss. 2013). These are the only exceptions to Eleventh Amendment immunity. *See id*.

The Plaintiffs apparently concede that neither the abrogation exception nor the waiver exception applies. Instead, their only argument concerns the *Ex parte Young* doctrine. The *Ex parte Young* doctrine has long been recognized as an "exception to Eleventh Amendment sovereign immunity[.]" *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) (citing *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908)). "The *Young* exception is a legal fiction that allows private parties to bring 'suits for injunctive or declaratory relief against individual state officials acting in violation of federal law.'" *Id*. (quoting *Raj v. La. State Univ.*, 714 F.3d 322, 328

5

(5th Cir. 2013)). In order to determine whether the *Ex parte Young* doctrine is applicable, the Court need not examine the merits of the claim but "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id*. at 998 (quoting *Va. Office for Prot. and Advocacy v. Stewart*, 563 U.S. 247, 255, 131 S. Ct. 1632, 179 L. Ed. 2d 675 (2011)).

Although the Plaintiffs make a passing reference to *Ex parte Young* in their Response [33], a review of the Amended Complaint [25] clearly shows that the relief sought in this matter is compensatory and not prospective. The Amended Complaint [25] does not allege an ongoing violation of federal law but, rather, only requests monetary damages for the events that occurred on September 16, 2017. In fact, other than in their Response [33] where they make a desperate attempt to avoid dismissal, the Plaintiffs have made no contention that the Defendants are responsible for an ongoing violation of the law. Because the Plaintiffs do not seek prospective relief, the *Ex parte Young* doctrine is inapplicable. *See Papasain v. Allain*, 478 U.S. 265, 278, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986) ("Relief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant. This is true if the relief is expressly denominated as damages. It is also true if the relief is tantamount to an award of damages for a past violation of federal law, even though styled as something else. On the other hand, relief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment[.]") (internal citations omitted).

Since MDPS is an "arm of the state" for Eleventh Amendment purposes and no exception to Eleventh Amendment immunity applies, the Plaintiffs' claims against MDPS and their official

6

capacity claims against Trooper Williams cannot proceed in this forum. Those claims are hereby dismissed *without prejudice*.[2]

### II. Qualified Immunity

Having found that the claims against MDPS and the official capacity claims against Trooper Williams must be dismissed, the Court now turns to the individual capacity claims against Trooper Williams. In the Amended Complaint [25], Brownlee contends that she was subject to a false arrest in violation of the Fourth Amendment and the Fourteenth Amendment.[3] The other Plaintiffs assert that Trooper Williams violated their Fourth and Fourteenth Amendment rights when they "were improperly seized by Defendant Williams by being left on the side of the road after Defendant Williams took Plaintiff Brownlee into custody and drove away[.]" [25]. Again, Trooper Williams claims that he is entitled to qualified immunity on these claims.[4]

"Qualified immunity shields government officers performing discretionary functions from civil liability for claims under federal law insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Randle v. Lockwood*, 666 F. App'x 333, 335 (5th Cir. 2016) (quoting *Kinney v. Weaver*, 367 F.3d 337, 347-48 (5th Cir. 2004)) (additional citation omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power

---

[2] These claims are dismissed *without prejudice* in accordance with the Fifth Circuit's clear mandate that claims dismissed due to Eleventh Amendment immunity should be pursuant to Rule 12(b)(1) and *without prejudice*. *See United States v. Texas Tech Univ.*, 171 F.3d 279, 286 (5th Cir. 1999); *Anderson v. Jackson State Univ.*, 675 F. App'x 461, 464 (5th Cir. 2017).

[3] Although Brownlee claims in the Amended Complaint [25] that the alleged false arrest constituted a violation of her Fourteenth Amendment rights, it is well-established that a false arrest claim must be analyzed under the Fourth Amendment—not the Fourteenth Amendment. *See Malbrough v. Stelly*, 814 F. App'x 798, 2020 WL 2507355 at *3 n.7 (5th Cir. 2020) (citing *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L .Ed. 2d 443 (1989)) ("[W]hen a claim is properly analyzed under the Fourth Amendment, the Fourteenth is inapplicable."). Brownlee ultimately concedes this point. *See* [35]. Therefore, to the extent that Brownlee asserts a false arrest claim under the Fourteenth Amendment, it is dismissed.

[4] The Plaintiffs have also asserted state law claims against Trooper Williams in his individual capacity. However, those claims are not the subject of the present Motion.

irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). The standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (citations omitted).

To properly analyze qualified immunity, the Court must engage in a two-pronged analysis, "inquiring (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right and, (2) whether the constitutional right was clearly established at the time the conduct occurred. *Young v. Bd. of Supervisors of Humphreys Cnty., Miss.*, 2018 WL 632024 at *2 (N.D. Miss. Jan. 30, 2018) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).

    A.    **Fourth Amendment**

Brownlee's Fourth Amendment claim is based on false arrest. The other Plaintiffs' Fourth Amendment claims concern Trooper Williams leaving them on the side of the road when taking Brownlee into custody.

    i.    *Brownlee's Fourth Amendment Claim*

As to Brownlee's claim, an individual's right to be free from arrest without probable cause is clearly established, therefore satisfying the second prong of the qualified immunity analysis. *See*, *e.g.*, *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009) ("The Fourth Amendment right to be free from false arrest—arrest without probable cause—was clearly established at the time of [the plaintiffs'] arrests."). Thus, the Court's analysis of this claim hinges upon the first prong—whether, viewing the facts in the light most favorable to Brownlee, a constitutional violation occurred.

The parties do not dispute the pertinent facts. Brownlee was arrested and charged with speeding, a window tint violation, failure to have insurance, a seatbelt violation, and driving under the influence. The charge for driving under the influence was later dismissed, but Brownlee pled guilty to the other charges. While the dismissal of the driving under the influence charge is not dispositive as to whether there was probable cause to arrest her for that offense, Trooper Williams does not argue that point. Instead, Trooper Williams asserts that because Brownlee pled guilty to speeding, she, as a matter of law, cannot claim that her arrest violated the Fourth Amendment pursuant to the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L.Ed.2d 383 (1994), and its progeny. In other words, Trooper Williams contends that, regardless of the outcome of the driving under the influence charge against Brownlee, the fact that she pled guilty to the speeding violation bars any claim for unlawful arrest.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It is well-settled that the lack of probable cause is "a necessary component" of a false arrest claim. *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010); *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) ("If there was probable cause for any of the charges made . . . then the arrest was supported by probable cause, and the claim for false arrest fails.") (emphasis omitted) (additional citations omitted); *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001) ("The 'constitutional torts' of false arrest, unreasonable seizure, and false imprisonment . . . require a showing of no probable cause."). "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Curtis v. Anthony*, 710 F.3d 587, 595 (5th Cir. 2013) (quoting *Ill. v. Gates*, 462 U.S. 213, 245 n. 13, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)). Therefore, "probable cause exists when the totality of facts and circumstances within a

police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Id.* (quoting *Mack v. City of Abilene*, 547, 552 n.1 (5th Cir. 2006)). "For warrantless arrests, the test for whether the police officer had probable cause to arrest is if, at the time of the arrest, he had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime." *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994) (quoting *Duckett v. City of Cedar Park*, 950 F.2d 272, 278 (5th Cir. 1992)).

Importantly, the Fifth Circuit has repeatedly made clear that a claim for false arrest must fail if the officer had probable cause to arrest for *any* charge—not *all* charges. *See*, e.g., *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) ("If there was probable cause for any of the charges made . . . then the arrest was supported by probable cause, and the claim for false arrest fails.") (emphasis omitted); *see also Winston v. City of Shreveport*, 390 F. App'x 379, 384 (5th Cir. 2010) ("The district court correctly found that if [the officer] had probable cause to arrest [the plaintiff] for any charge, it did not need to examine whether probable cause existed for the additional charges."). Thus, Trooper Williams need not show that probable cause existed as to *all* charges against Brownlee, only that probable cause existed as to *any* of the charges.

Mississippi Code Section 45-3-21 grants the Mississippi Highway Patrol authority to "arrest without warrant any person or persons committing or attempting to commit any misdemeanor . . . within their presence or view[.]" Miss. Code Ann. § 45-3-21(1)(a)(vi). Speeding is undoubtedly a misdemeanor under Mississippi law. *See* Miss. Code Ann. § 63-3-201; *Whitfield v. City of Ridgeland*, 2013 WL 6632092 at *5 (S.D. Miss. Dec. 17, 2013).

In light of these authorities, Trooper Williams argues that, because Brownlee pled guilty to speeding, she cannot state a viable false arrest claim. The Court has located numerous cases

where it has been held that false arrest claims must fail in this context. *See*, *e.g.*, *Toler v. Steed*, 1999 WL 33537150, at *3 (N.D. Miss. July 29, 1999) (holding that a speeding violation, which had not been appealed or otherwise challenged, precluded a Section 1983 false arrest claim); *Whitfield*, 2013 WL 6632092, at *5 ("And as there was probable cause to arrest plaintiff for speeding, then the arrest was supported by probable cause, and the claim for false arrest fails."); *Carney v. Lewis*, 2014 WL 7231772, at *2 (S.D. Miss. Dec. 18, 2014) ("Indeed, the law is clear that the [plaintiff's] conviction on the speeding charge not only bars any claim relating to his arrest and prosecution for that offense, but also precludes a Fourth Amendment claim for false arrest on the other charges, as well. This is because claims for false arrest focus on the validity of the arrest, not on the validity of each individual charge made during the course of the arrest.") (citations omitted).

The Plaintiff provides no argument in opposition to this well-established precedent but instead contends that "[n]one of the other charges to which [she] pled are arrestable offenses per DPS guidelines. There are no documents to support the notion that [Brownlee] was taken into custody (arrested) on the charge of speeding. Yes she pled guilty to speeding, but was this really why she was taken into custody? Was she profiled? Was she known to Officer Williams for another reason?" [35] (emphasis omitted).

Thus, the Plaintiff attempts to survive dismissal by relying on Trooper Williams' alleged violation of internal MDPS guidelines and his purported subjective intentions when effectuating her arrest. These arguments are non-starters. Whether Trooper Williams violated an internal MDPS guideline is irrelevant for Section 1983 purposes. *See Kidd v. Meridian Pub. Sch. Dist.*, 2014 WL 2573414 at *8 (S.D. Miss. June 9, 2014) ("Generally speaking, § 1983 imposes liability on governmental entities for . . . violations of federal law. A defendant's mere failure to follow its

11

own policy, does not amount to [a] constitutional violation.") (internal citation omitted) (citing *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986)). Further, any perceived subjective intentions of Trooper Williams at the time of arrest are also irrelevant, as the applicable standard concerns *objective reasonableness*. *See Ziglar v. Abbasi*, --- U.S. ---, 137 S. Ct. 1843, 1866, 198 L .Ed. 2d 290 (2017) ("Whether qualified immunity can be invoked turns on the 'objective legal reasonableness' of the official's acts.").

Ultimately, by pleading guilty to the speeding violation, a judgment which she has not appealed or otherwise attacked, Brownlee has precluded herself from pursuing a false arrest claim. *See Hudson v. Hughes*, 98 F.3d 868, 872 (5th Cir. 1996) ("A [S]ection 1983 claim that effectively attacks the constitutionality of a conviction or imprisonment does not accrue until that conviction or sentence has been 'reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.'") (quoting *Heck*, 512 U.S. at 486-87). Internal MDPS guidelines and Trooper Williams' alleged subjective intentions have no applicability in this analysis. Brownlee's Fourth Amendment claim against Trooper Williams in his individual capacity is hereby dismissed.

    *ii.       The Passenger Plaintiffs' Fourth Amendment Claims*

The Court now turns to the Fourth Amendment claims asserted against Trooper Williams in his individual capacity by the three minor children and Pride. They contend that they were "improperly seized by Defendant Williams by being left on the side of the road after Defendant Williams took Plaintiff Brownlee into custody and drove away in violation of their Fourth Amendment rights . . . [and] were further improperly seized by Defendant Williams by being left on the side of the road after Defendant Williams took Plaintiff Brownlee and going into custody

12

of an unknown tow truck driver in violation of their Fourth Amendment rights." [35]. Thus, while they do not dispute that Trooper Williams had authority to initiate a traffic stop when he observed Brownlee violate the speed limit, Pride and the three minor children assert that Trooper Williams violated their constitutional rights by leaving them on the side of the road after taking Brownlee into custody.

In analyzing qualified immunity as to these claims, the Court will begin by looking to the second prong of the qualified immunity analysis—whether the constitutional right at issue was clearly established. *See Keller v. Fleming*, 952 F.3d 216, 221 (5th Cir. 2020) ("We have discretion to address either prong of the qualified immunity inquiry first."). "For purposes of determining whether the right was clearly established, 'the relevant question is whether a reasonable officer could have believed his or her conduct to be lawful, in light of clearly established law and the information the officers possessed.'" *Id.* at 225 (quoting *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)) (internal citations omitted). "In other words, Plaintiffs must point this court to a legislative directive or case precedent that is sufficiently clear such that every reasonable official would have understood that what he is doing violates that law." *Id.* (citing *Reichle v. Howards*, 566 U.S. 658, 664, 132 S. Ct. 2088, 182 L. Ed. 2d 985 (2012); *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011)).

Arguing that the applicable law is clearly established, the Plaintiffs cite the Fifth Circuit's recent decision in *Keller v. Fleming*, a case which was appealed from this Court. 952 F.3d 216. In *Keller*, a mentally infirmed man, Gerald Simpson, was walking in the middle of the highway in Kosciusko, Mississippi at around 5:00 p.m. *Id.* at 219. After a citizen alerted the Kosciusko Police Department of the situation, an officer was dispatched but, upon arrival, he determined that Simpson was actually outside the city limits and within Attala County's jurisdiction and contacted

the Attala County Sheriff's Department to take control. *Id.* at 219-20. Deputy Fleming of the Attala County Sheriff's Department arrived on the scene and placed Simpson in the back of his vehicle, at which point he purportedly decided to take Simpson to his residence. *Id.* at 220. However, when Deputy Fleming was unable to understand Simpson's incoherent speech and therefore unable to determine the location of his residence, he drove Simpson west on Highway 12 in the direction of Durant, Mississippi—the direction where Simpson had pointed. *Id.* Ultimately, Deputy Fleming continued transporting Simpson in that direction until he reached the Attala County line and then pulled over and opened the back door of his patrol vehicle. *Id.* Simpson exited the vehicle and continued walking toward Durant—outside of Attala County's jurisdiction. *Id.* Later that evening, Simpson was struck by a vehicle and killed while walking back east toward Kosciusko. *Id.*

A wrongful death suit was filed, and this Court granted summary judgment in favor of the City of Kosciusko and its officers but declined to extend qualified immunity to Deputy Fleming. *Id.* at 220. On appeal, the Fifth Circuit, though finding that a constitutional violation occurred, reversed this Court's qualified immunity ruling on the basis that the applicable law was not clearly established. *Id.* at 225. The Fifth Circuit specifically held that there was "no binding Supreme Court or Fifth Circuit precedent to anchor our de novo review of whether a similarly situated officer violated a constitutional right acting under similar circumstances." *Id.* (citing *White v. Pauly*, --- U.S. ---, 137 S. Ct. 548, 551, 196 L. Ed. 2d 463 (2017) ("For a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.") (internal citations omitted)). The Fifth Circuit held that the plaintiffs failed to meet their burden of showing that Deputy Fleming's conduct violated clearly established law. *Id.* at 226.

With this standard in mind, the Court turns to the facts of this case, as well as the Plaintiffs' briefing on the Fourth Amendment claim. Although the Plaintiffs cite to *Keller* for the proposition that a clearly established constitutional right was violated, the Court finds the facts of *Keller* easily distinguishable. There, the Deputy took the decedent into custody and drove him several miles prior to forcing him out of the patrol car when he exited his jurisdiction. Here, Trooper Williams, though briefly stopping the vehicle which the Plaintiffs were occupying, never took the passengers into custody. He did not transport them anywhere, nor have they alleged that he told them that they could not leave. For these reasons, *Keller* is distinguishable, and, in the Court's view, does not provide sufficient clarity to put every reasonable official on notice that Trooper Williams' conduct in this case ran afoul of the Fourth Amendment.[5]

The Plaintiffs also cite general Fourth Amendment propositions, such as the overarching definition of a "seizure," to support their position. *See* [35]. However, the Supreme Court has cautioned lower courts against defining clearly established rights at a high level of generality. *See*, *e.g.*, *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503, 202 L. Ed. 2d 455 (Jan. 7, 2019) (noting that a circuit court's definition of the clearly established right at issue was "far too general"); *Mote v. Walthall*, 902 F.3d 500, 505 (5th Cir. 2018) ("The Supreme Court has admonished courts 'not to define clearly established law at a high level of generality.'") (citations omitted). In accordance with the clear mandates from the Supreme Court and the Fifth Circuit, the Court declines to adopt the overly broad definition of the right at issue which the Plaintiffs urge.

Because the Plaintiffs have not alleged that Trooper Williams' conduct constituted a clearly established right under the Fourth Amendment, Trooper Williams is entitled to qualified immunity.

---

[5] In addition to the facts of *Keller* being easily distinguishable, the Court notes the other glaring deficiency in the Plaintiffs' argument on this point—that the Fifth Circuit's decision in *Keller* occurred subsequent to the conduct at issue in this case, which occurred on September 16, 2017.

The Plaintiffs' Fourth Amendment claims against Trooper Williams in his individual capacity are therefore dismissed.

   *B.*  *Fourteenth Amendment*

The Court now turns to the Plaintiffs' Fourteenth Amendment claims. The Court has already dismissed Brownlee's Fourteenth Amendment claim based upon well-established precedent that false arrest claims must be analyzed under the Fourth Amendment—not the Fourteenth Amendment. Thus, the three minor children and Pride's have asserted the only remaining Fourteenth Amendment claims. Their Fourteenth Amendment claims concern the same conduct as their Fourth Amendment claims addressed above—particularly, that Trooper Williams violated their Fourteenth Amendment rights by leaving them on the side of the road when he took Brownlee into custody.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Concerning the scope of the clause, "[t]here can be no dispute that the Fourteenth Amendment includes as a liberty interest 'a right to be free from . . . unjustified intrusions on personal security.'" *Bright for Doe v. Tunica Cty. Sch. Dist.*, 2017 WL 3996409 at \*5 (N.D. Miss. Sept. 11, 2017) (quoting *Ingraham v. Wright*, 430 U.S. 651, 673, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977)).

Although the Due Process Clause provides a general protection from unjustified intrusions on personal security, "a state official has no constitutional duty to protect an individual from private violence." *McClendon v. City of Columbia*, 305 F.3d 315, 324 (5th Cir. 2002) (citing *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989)). Stated differently, "a State's failure to protect an individual against private

16

violence simply does not constitute a violation of the Due Process Clause." *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (citing *DeShaney*, 489 U.S. at 197). Nevertheless, "some courts have allowed two possible exceptions to that general rule . . .: (1) when the state has a 'special relationship' with the citizen, such as when the state takes the person into custody or otherwise limits the person's freedom to act on his or her own behalf; and (2) when the state has created the danger that led to the person's injury[.]" *Miss. v. Rinehart*, 2016 WL 4703516 at *7 (N.D. Miss. Sept. 7, 2016) (citing *DeShaney.*, 489 U.S. at 195-96) (additional citations omitted).[6]

The Plaintiffs recognize the limited protections afforded under the Fourteenth Amendment in this context; however, they contend that the "special relationship" exception is applicable or, at a minimum, they are "entitled to discovery in order to address proper application of the law to the facts and see whether the *DeShaney* 'special relationship' applies." [35].

Regarding this exception, the Supreme Court has noted that "in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." *DeShaney*, 489 U.S. at 198. "When the state, through the affirmative exercise of its powers, acts to restrain an individual's freedom to act on his own behalf 'through incarceration, institutionalization, or other similar restraint of personal liberty,' the state creates a 'special relationship' between the individual and the state which imposes upon the state a constitutional duty to protect that individual from dangers, including, in certain circumstances, private violence." *McClendon*, 305 F.3d at 324 (citing *DeShaney*, 498 U.S. at 200). The Fifth Circuit has emphasized the narrow scope of the "special relationship" exception, having only

---

[6] As to the second possible exception, the Court notes that the Fifth Circuit has recently reiterated that the state created danger theory is not cognizable in this Circuit. *See Robinson v. Webster Cty., Miss.*, --- F. App'x ---, 2020 WL 5160059 at *3 (5th Cir. Aug. 31, 2020).

17

previously extended it to circumstances where the state has incarcerated a prisoner, involuntarily committed an individual to an institution, or placed a child in foster care. *Doe v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 855-56 (5th Cir. 2012) (quoting *DeShaney*, 489 U.S. at 199-200, 109 S. Ct. 998). The purpose of the exception is to place a duty upon the State when it has imposed a limitation upon an "individual's freedom to act on his own behalf." *Id.* at 856.

The Plaintiffs have cited no authority where the "special relationship" exception was applied beyond these very limited circumstances, none of which apply here. Thus, even if the Court determined that Trooper Williams' conduct constituted a violation of their Fourteenth Amendment rights, an issue which it need not decide at this time, Trooper Williams would nevertheless be entitled to qualified immunity because the right at issue undoubtedly is not clearly established. In other words, the right at issue is not "beyond debate." *See McCoy v. Alamu*, 950 F.3d 226, 233 (5th Cir. 2020) ("[F]or the law to be clearly established, it must have been 'beyond debate' that [the defendant] broke the law."). Trooper Williams is therefore entitled to qualified immunity on the Plaintiffs' Fourteenth Amendment claims. The Plaintiffs' Fourteenth Amendment claims against Trooper Williams in his individual capacity are hereby dismissed.

## III.     *Supplemental Jurisdiction*

In light of the Court's above findings, the only remaining claims are the state law claims asserted against Trooper Williams in his individual capacity. Although discretionary under 28 U.S.C. § 1367, the general rule in the Fifth Circuit is for federal courts to decline to exercise supplemental jurisdiction in this context. *See Riggins v City of Indianola, Miss.*, 196 F. Supp. 3d 681, 697 (N.D. Miss. 2016) (quoting *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999)) ("When a district court dismisses all federal claims before trial, 'the general rule is to dismiss any pendent claims.'"). The Plaintiffs have provided no reason, and the Court likewise finds no reason,

to depart from this general rule, particularly considering that no discovery has been conducted at this time. Furthermore, if the Plaintiffs still desire to pursue their claims against MDPS and their official capacity claims against Trooper Williams, they must be pursued in state court. There is no need for two separate parallel actions to proceed in two different forums. This Court therefore declines to exercise supplemental jurisdiction over the remaining state law claims. Those claims are dismissed *without prejudice*.

*Conclusion*

For the reasons set forth above, MDPS' Motion to Dismiss [28] and Trooper Williams' Motion to Dismiss [30] are GRANTED. All claims against MDPS and all official capacity claims against Trooper Williams are dismissed *without prejudice*. All federal claims against Trooper Williams in his individual capacity are dismissed *with prejudice*. The Court declines to exercise supplemental jurisdiction over the Plaintiffs' state law claims against Trooper Williams in his individual capacity, and those claims are dismissed *without prejudice*. This CASE is CLOSED.

SO ORDERED, on this the 14th day of September, 2020.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE